IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ENRIQUE QUIROZ, Deceased, | § | |
| through JOSEPHINE SALAZAR | § | |
| Individually, and as NEXT FRIEND | § | |
| OF J.R.S., E.F.Q., and E.Q., Minors; | § | |
| MERCEDES QUIROZ, JASMINE | § | |
| QUIROZ, ANDREW RAMIREZ and | § | |
| CHRISTINA ESPINOZA as | § | |
| NEXT FRIEND OF H.E., a Minor, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | No. 1:21-cv-00443-RP |
| | § | |
| OFFICERS EDUARDO PINEDA, | § | |
| SPENCER HANNA and | § | |
| CITY OF AUSTIN, TEXAS, | § | |
| *Defendants*. | § | |

**DEFENDANTS EDUARDO PINEDA AND SPENCER HANNA'S ANSWER
TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Defendants, Eduardo Pineda and Spencer Hanna (hereinafter "Defendants" or "Pineda and Hanna") by and through their attorneys of record, and file this Answer to Plaintiff, Enrique Quiroz, deceased, through Josephine Salazar, individually and as next friend of J.R.S., E.F.Q., and E.Q., minors; Mercedes Quiroz, Jasmine Quiroz, Andrew Ramirez and Christina Espinoza as next friend of H.E., a minor (hereinafter "Quiroz"), Second Amended Complaint (Dkt. # 33) and in support thereof would respectfully show the Court as follows:

# I.
# INTRODUCTION

1. In the month leading up to March 31, 2020, Plaintiff, Josephine Salazar, sought and obtained a formal trespass warning issued to Decedent Enrique Quiroz, forbidding him from entering her property henceforth—namely, her apartment home where the facts underlying this lawsuit occurred.[1] On March 31, 2020, Decedent forced his way into Plaintiff Salazar's home and refused to leave, causing Plaintiff Salazar to seek the help of the Austin Police Department to remove him from her home once again. Decedent's entry and presence in Plaintiff Salazar's home against her will—after having already received a formal trespass warning—constituted a Class A misdemeanor under Texas law, which is punishable by up to one year in jail.[2]

2. Defendants, Austin Police Department Officers Eduardo Pineda and Spencer Hanna, were both called to the scene to assist Plaintiff Salazar. The prior trespass warning was confirmed, and the officers spoke to Plaintiff Salazar outside of the apartment. The officers learned that Decedent had refused to leave, may be under the influence of drugs, and that he had been acting in an erratic or strange manner.

3. Officers Pineda and Hanna entered the apartment, while Plaintiff Salazar remained outside due to her fear that Decedent might resist arrest or fight with the officers. Once inside, the Officers verbally engaged Decedent and noticed that he was a very large and imposing man—weighing approximately as much as both Officers *combined*. For approximately the next fifteen minutes, the Officers used de-escalation techniques, including conversing with Decedent and even giving him a chance to find evidence on his phone to prove that Plaintiff Salazar had invited him into her apartment. After it was clear that he possessed no such evidence and was indeed acting in an erratic

---

[1] *See* TEX. PEN. CODE § 30.05.
[2] *See* TEX. PEN. CODE § 30.05(c)(3)(i).

manner, the officers began to initiate an arrest to remove the man from the residence of a woman—Plaintiff Salazar—who had gone to great lengths to get him to leave her home.

4.    During the approximately fifteen-minute period of de-escalation, the officers informed Decedent that he would be arrested absent the above-referenced proof of an invitation. Eventually, the officers issued commands for him to stand up and put his hands behind his back so that he could be placed under arrest. Decedent stood up, but otherwise refused to comply. The officers attempted to take hold of Decedent's arm to initiate the arrest, but Decedent pulled his arm away and resisted any and all subsequent attempts by the officers to arrest him. At that point, the officers had not yet had a chance to frisk Decedent, and—as they would later discover—Decedent was carrying a knife in his pocket.

5.    After de-escalation, verbal commands, and attempts at relaxed physical control failed, Officer Pineda was eventually forced to use his Taser device on Decedent to allow the officers to arrest him. However, the Taser device was not effective, and the officers were still unable to subdue Decedent and place him under arrest. By this point, both officers were forced to go hands-on in an attempt to wrestle Quiroz to the floor so that he could be placed in handcuffs and arrested. For approximately the next five minutes, Decedent dragged and wrestled the two officers across the apartment, and refused all officer commands to submit to arrest. At one point, Decedent grabbed one officer's vest near his throat and yelled threateningly into his face.

6.    Eventually—after having dragged and wrestled the two officers outside onto the apartment complex second-floor landing—Decedent was finally taken to the ground and put in handcuffs. Decedent only spent a matter of seconds laying on his stomach while restrained in handcuffs. Almost immediately thereafter, several APD officers arrived as backup and took control of the

scene. Officers Pineda and Hanna had virtually no interactions whatsoever with Decedent from that point forward.

7. The APD officers who had arrived as backup attempted to transport Decedent down the stairs to where EMS had arrived. Decedent—who is believed to have weighed approximately 330 pounds at that time—refused to walk to EMS's location on his own, and actively resisted being physically carried to where EMS was waiting to help him. Eventually—long after any of Officers Pineda and Hanna's interactions with Decedent—EMS administered to Decedent what is believed to have been a benzodiazepine via syringe to sedate the still-resisting Decedent. Decedent soon after suffered a medical emergency. Life-saving measures were attempted by EMS, but Decedent ultimately passed away shortly thereafter. Based on information and belief, Decedent was discovered to have been under the influence of numerous illicit drugs during the entire encounter that forms the basis of this lawsuit.

8. In contrast to the description of events contained in the Second Amended Complaint, Officer Pineda and Officer Hanna never punched or kicked or elbowed Decedent, never used force against him once he had already been restrained in handcuffs, and never struck Decedent in the head. The force used by Officers Pineda and Hanna was used only to the extent necessary to subdue Decedent and make it possible to arrest him and remove him from Plaintiff Salazar's residence, as she had requested. This lawsuit follows.

## II.
## ORIGINAL ANSWER

### A. Parties and Service.

9. Defendants are without sufficient knowledge to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiffs' Second Amended Complaint regarding place of

residence, and therefore deny the same. Defendants admit that an EMS employee administered medications to the Decedent that included Versed. Otherwise, denied.

10.     As to the allegations contained within Paragraph 2 of Plaintiffs' Second Amended Complaint, Defendants admit that they have been served and have appeared. Otherwise, Defendants are without sufficient knowledge to form a belief as to the truth of the remaining allegations therein.

    **B.  Jurisdiction and Venue & Nature of Action.**

11.     As to the allegations contained within Paragraphs 3 – 4 of Plaintiffs' Second Amended Complaint, no answer is necessary from these Defendants. To the extent any answer is deemed necessary, Defendants admit that Plaintiffs seek the relief requested therein pursuant to the cited bodies of law. Otherwise, denied.

    **C.  Facts.**

12.     As to the allegations contained within Paragraph 5 of Plaintiffs' Second Amended Complaint, Defendants admit that Decedent had been previously issued a criminal trespass warning by Plaintiff Josephine Salazar; admit that Plaintiff violated the criminal trespass notice by entering Plaintiff Salazar's home; admit that Plaintiff Salazar instructed him to leave and he refused; admit that they personally discussed the circumstances of Decedent's presence and the problems it posed due to a prior trespass warning; admit that Officer Pineda used a Taser device generally to attempt to subdue Decedent; admit that they attempted to use a small number of minor knee strikes against Decedent in their attempts to subdue and arrest him; and admit that they wrestled with Decedent for approximately five minutes to attempt to subdue and arrest him in the face of his continuing aggressive physical resistance; admit that he was approximately 5'9" tall

and that he weighed more than 300 lbs; and admit that someone from EMS injected Decedent with medication that included Versed. Otherwise, denied.

13. As to the allegations contained within Paragraphs 6 – 7 of Plaintiffs' Second Amended Complaint, Defendants admit that someone from EMS administered medications to Decedent that ultimately proved to be dangerous to Decedent's health. Defendants deny the remaining allegations contained within Paragraphs 6 – 7 of Plaintiffs' Second Amended Complaint.

**D. Causes of Action.**

    **i. Excessive Force.**

14. Defendants deny the allegations contained within Paragraph 8 of Plaintiffs' Second Amended Complaint.

    **ii. Negligent Retention, Training, Supervision and Absence of Policies, Discipline and Procedures.**

15. As to the allegations contained within Paragraphs 9 – 10 of Plaintiffs' Second Amended Complaint, no answer is necessary from these Defendants. To the extent any answer is deemed necessary, Defendants deny such allegations.

    **iii. Damages, Exemplary Damages, & Prayer.**

16. As to the allegations contained in Paragraphs 11 – 12 and the Prayer, no answer is necessary from these Defendants. To the extent any answer is deemed necessary, Defendants admit that Plaintiffs seek the relief requested therein. Otherwise, denied.

## III.
## AFFIRMATIVE DEFENSES & IMMUNITIES

17. Defendants Pineda and Hanna deny any deprivation under color of statute, ordinance, custom, or abuses of any rights, privileges, or immunities secured to the decedent by the United States Constitution, state law, or 42 U.S.C. § 1983, *et seq*.

18.  Defendants hereby invoke the doctrine of Qualified Immunity and Official Immunity. Defendants discharged their obligations and public duties in good faith, and would show that their actions were objectively reasonable in light of the law and the information possessed at that time.

19.  The incident in question and the resulting harm to Decedent were caused or contributed to by Decedent's own illegal and/or dangerous conduct.

20.  Pleading further and in the alternative, Plaintiffs' injuries and damages were caused in whole or in part by the conduct of other persons or entities.

21.  Pleading further, alternatively, and by way of affirmative defense, Defendants Pineda and Hanna would show that at the time and on the occasion in question, Decedent failed to use ***any*** degree of care or caution that a person of ordinary prudence would have used under the same or similar circumstances, and that such failure was a producing cause or the sole proximate cause of the incident and alleged damages that arise therefrom. Defendants Pineda and Hanna invoke the comparative responsibility provisions of the Texas Civil Practice & Remedies Code.[3]

22.  Defendants further plead that, in the unlikely event they are found to be liable, such liability be reduced by the percentage of the causation found to have resulted from the acts or omissions of other persons.

23.  Defendants plead that they had legal justification for each and every action taken by them relating to this incident.

24.  Defendants assert the limitations and protections of Chapters 41 & 101 of the Texas Civil Practice & Remedies Code, and the due process clause of the United States Constitution.

25.  Defendants reserve the right to assert additional affirmative defenses throughout the development of this case.

---

[3] *See* TEX. CIV. PRAC & REM. CODE ANN. § 33.001.

26. To the extent Defendants did not address a specific averment made by Plaintiffs in their Second Amended Complaint, Defendants expressly deny all such averments.

## IV.
## JURY DEMAND

27. Pursuant to Federal Rule of Civil Procedure 48, Defendants hereby request a jury trial.

## V.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Defendants Eduardo Pineda and Spencer Hanna pray that upon a final hearing of this cause, the Court dismiss all of Plaintiffs' claims with prejudice, that all costs of court be assessed against Plaintiffs, that they be awarded attorney fees incurred in the defense of this suit, and for all further relief to which they may be justly entitled.

Respectfully submitted,

**WRIGHT & GREENHILL, P.C.**
900 Congress Avenue, Suite 500
Austin, Texas  78701
512-476-4600
512-476-5382 – Fax

By:      /s/ Blair J. Leake
Blair J. Leake
State Bar No. 24081630
bleake@w-g.com
Stephen B. Barron
State Bar No. 24109619
sbarron@w-g.com
Archie Carl Pierce
State Bar No. 15991500
cpierce@w-g.com

**ATTORNEYS FOR DEFENDANTS EDUARDO PINEDA AND SPENCER HANNA**

## CERTIFICATE OF SERVICE

      I hereby certify that on the 20th day of April 2022, a copy of Defendants Eduardo Pineda and Spencer Hanna's Answer to Plaintiffs' Second Amended Complaint was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorneys of record:

Bobby R. Taylor
1709 E. Martin L. King, Jr. Blvd.
Austin, Texas 78702
bobby@taylor-law.com

Monte L. Barton, Jr.
City of Austin – Law Department
P.O. Box 1546
Austin, Texas  78767-1546
monte.barton@austintexas.gov

                              /s/ Blair J. Leake
                              Blair J. Leake